**FILED**

DEC 1 1 2019

Clerk, U.S. Courts
District Of Montana
Missoula Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| KEITH JONES,<br><br>    Plaintiff,<br><br> vs.<br><br>BNSF RAILWAY COMPANY, a<br>Delaware corporation,<br><br>    Defendant. | CV 18–146–M–DLC<br><br><br>ORDER |

Before the Court are four discovery motions: (1) Plaintiff Keith Jones's First Motion to Compel Discovery Responses and for Leave of Court to Supplement Expert Disclosures (Doc. 30); (2) Defendant BNSF Railway Company's First Motion for Protective Order (Doc. 36); (3) Jones's Second Motion to Compel (Doc. 39); and (4) BNSF's Motion for Protective Order regarding PMP and ICP (Doc. 45). The Court grants in full BNSF's second motion for a protective order. (Doc. 45.) All other motions are granted in part and denied in part. (Docs. 30, 36, 45.) A hearing on the motions is unnecessary.

## PROCEDURAL & LEGAL BACKGROUND

Plaintiff Keith Jones worked for Defendant BNSF from April 10, 2006 to July 9, 2010 and again from February 21, 2011 until his termination on July 17,

2017. He alleges that BNSF took adverse employment actions against him on two occasions: (1) when BNSF investigated and disciplined him in January 2017; and (2) again when BNSF fired him in July of that year. (Doc. 1.) Jones claims that the investigation and termination are unlawful under the Federal Rail Safety Act, 49 U.S.C. § 20109, because they were in response to him making internal reports and external complaints regarding safety. In relevant part, the FRSA reads:

(b) Hazardous safety or security conditions.—

(1) A railroad carrier engaged in interstate or foreign commerce, or an officer or employee of such a railroad carrier, shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for—

(A) reporting, in good faith, a hazardous safety or security condition;

(B) refusing to work when confronted by a hazardous safety or security condition related to the performance of the employee's duties, if the conditions described in paragraph (2) exist; or

(C) refusing to authorize the use of any safety-related equipment, track, or structures, if the employee is responsible for the inspection or repair of the equipment, track, or structures, when the employee believes that the equipment, track, or structures are in a hazardous safety or security condition, if the conditions described in paragraph (2) exist.

(2) A refusal is protected under paragraph (1)(B) and (C) if—

(A) the refusal is made in good faith and no reasonable alternative to the refusal is available to the employee;

    (B)  a reasonable individual in the circumstances then confronting the employee would conclude that—

        (i)   the hazardous condition presents an imminent danger of death or serious injury; and

        (ii)  the urgency of the situation does not allow sufficient time to eliminate the danger without such refusal; and

    (C)  the employee, where possible, has notified the railroad carrier of the existence of the hazardous condition and the intention not to perform further work, or not to authorize the use of the hazardous equipment, track, or structures, unless the condition is corrected immediately or the equipment, track, or structures are repaired properly or replaced.

49 U.S.C. § 20109(b).

"A claim for unlawful retaliation under the FRSA has two stages: the prima facie stage, *see* 49 U.S.C. § 42121(b)(2)(B)(i)–(iii); 29 C.F.R. § 1982.104(e), and the substantive stage, *see* 49 U.S.C. § 42121(b)(2)(B)(iii)–(iv); 29 C.F.R. § 1982.109(a)–(b)." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018). Each stage requires application of a burden-shifting framework.

First, the employee must establish a prima facie case for retaliation by alleging the existence of four elements:

(i) The employee engaged in a protected activity (or . . . was perceived to have engaged or to be about to engage in protected activity);

(ii) The respondent knew or suspected that the employee engaged in the protected activity (or . . . perceived the employee to have engaged or to be about to engage in protected activity);

(iii) The employee suffered an adverse action; and

(iv) The circumstances were sufficient to raise the inference that the protected activity (or perception thereof) was a contributing factor in the adverse action.

29 C.F.R. § 1982.104. If the employee meets his or her burden, the employer can defeat the employee's prima facie case by "demonstrat[ing], by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of [the protected activity]." 49 U.S.C. § 42121(b)(2)(B)(ii).

Second, "[a]t the substantive stage, a violation will be found 'only if the complainant demonstrates that any [protected activity] *was* a contributing factor in the unfavorable personnel action alleged in the complaint." *Rookaird*, 908 F.3d at 460 (quoting 49 U.S.C. § 42121(b)(2)(B)(iii)) (emphasis and alteration in original). "Then—like at the prima facie stage—the employer can defeat the retaliation claim 'if the employer demonstrates by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of [the protected activity]." *Id.* (quoting 49 U.S.C. § 42121(b)(2)(B)(iv)) (alteration in original).

Important for purposes of this Order are the "contributing factor" requirements of both stages. To prevail at the substantive phase of his FRSA claim, Jones must prove to the jury BNSF's "discriminatory or retaliatory intent"

-4-

by demonstrating, "by a preponderance of the evidence, that [Jones's] protected conduct was a contributing factor to the adverse employment action—i.e., that it tended to affect the decision in some way." *Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1195–96 (9th Cir. 2019). At the prima facie stage, the issue is the same, but the plaintiff need not prove his or her theory by a preponderance of the evidence. *See, e.g., Rookaird*, 908 F.3d at 462–67 & n.6. "A 'contributing factor' includes 'any factor, which alone or in connection with other factors, tends to affect in any way the outcome of the decision.'" *Rookaird*, 908 F.3d at 461 (quoting *Gunderson v. BNSF Ry. Co.*, 850 F.3d 962, 969 (8th Cir. 2017)). It may be shown through circumstantial evidence, *Araujo v. N.J. Transit Rail Ops., Inc.*, 708 F.3d 152, 160–61 (3d Cir. 2013), including, for example:

> Temporal proximity, indications of pretext, inconsistent application of an employer's policies, an employer's shifting explanations for its actions, antagonism or hostility toward a complainant's protected activity, the falsity of an employer's explanation for the adverse action taken, and a change in the employer's attitude toward the complainant after he or she engages in protected activity.

*Ray v. Union Pac. R.R. Co.*, 971 F. Supp. 2d 869, 885 (S.D. Iowa 2013) (quoting *Defrancesco v. Union R.R. Co.*, Dep't of Labor Admin. Rev. Bd. 10-114 (2012), 2012 WL 694502).

## LEGAL STANDARD

Rulings on discovery issues fall within the Court's broad discretion over case management. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). The scope of discovery extends to all

> nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). For purposes of discovery, relevance is relatively expansive, "encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "If the information sought might reasonably assist a party in evaluating the case, preparing for trial, or facilitating settlement, it is relevant to the subject matter involved in the pending action." *Cintron v. Title Fin. Corp.*, 9:17-cv-108-M-DLC, 2018 WL 6605901, at *1 (Dec. 17, 2018) (quotation omitted). The information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A court may act to limit unreasonably cumulative, overbroad, unduly burdensome, or irrelevant discovery. Fed. R. Civ. P. 26(b)(2)(c).

A party may move to compel disclosure when it is unable to access information through its discovery requests. Fed. R. Civ. P. 37(a)(2)(A). "The moving party bears the burden of showing that the discovery sought is 'relevant' as defined above, and the party resisting discovery bears the burden of showing that nondisclosure is appropriate." *Cintron*, 2018 WL 6605901, at *1. The flipside of a motion to compel is a motion for a protective order, which may be granted "to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

This Court "takes an expansive view regarding relevance for purposes of discovery. At risk of stating the obvious, subject matter or documents may be relevant, as defined in the preceding paragraphs, for purposes of discovery, but will not meet the more stringent standard of relevance to constitute admissible evidence at trial." *Cintron*, 2018 WL 6605901, at *1.

Here, then, the question is whether the information Jones seeks to discover and BNSF seeks to avoid disclosing may be (or may lead to) direct or circumstantial evidence tending to show the reasons for his termination. This includes information probative of: the states of mind of individual decisionmakers, including company policies and procedures that arguably may have influenced those decisionmakers; and BNSF's general treatment of individuals similarly situated to Jones.

-7-

DISCUSSION

The Court considers the four pending motions in turn, keeping in mind the requirements of a FRSA claim for wrongful termination and the guiding discovery standards.

## I.     Jones's First Motion to Compel (Doc. 30)

Jones requests data regarding comparators—other BNSF employees accused of violating the same rule(s)—and specific documents from the personnel files of his supervisors—Incentive Compensation Plan ("ICP"), Performance Management Process ("PMP"), and merit award documents.  He further requests additional time to supplement expert reports following receipt of additional discovery.  The Court grants the motion in part.

### A. Comparator Data

Jones asked for information about employees "charged and/or notified of alleged violation of the same type of rule violation" as Jones, including "copies of each and every BNSF audit or analysis of BNSF waiver, alternative handling, leniency, discipline or no discipline for each employee notified of possible rule violation for each and every rule that Plaintiff was charged of violating" and "documents, reports, data, information, investigations summaries, audits, studies, or research regarding each and every BNSF employee charged with any of the

same rules violations" as Jones from 2012 through the present. (Doc. 31-1 at 4, 29, 31.)

Although it had not yet produced anything prior to submitting its response brief, BNSF has represented that it is not adverse to giving Jones *some* comparator data. However, it disagrees with the scope of Jones's request, suggesting that it would be willing to give data regarding Montana employees accused of the same conduct in 2016 and 2017. (Doc. 31-2 at 16–27, 47–48.) Thus, there are three points of dispute between the parties. First, Jones wants seven years of data, and BNSF has offered two. Second, Jones wants company-wide data, and BNSF has offered to give Montana-specific information. Third and finally, Jones seeks information regarding employees charged with violating the same rule as Jones, while BNSF argues that Jones should get only data about employees accused of the same conduct as Jones.

The issue of entitlement to comparator data is not new to this Court (or to the parties' attorneys). In 2015, Magistrate Judge John T. Johnston ruled that a FRSA plaintiff was entitled to approximately four years of comparator data, noting that "[m]uch of the information [the plaintiff sought] appears relevant." *See Brewer v. BNSF Railway Co.*, 14-cv-65-GF-BMM-JTJ, at *5–8 (D. Mont. Nov. 20. 2015). Here, as in *Brewer*, the plaintiff is entitled to much of what he requests. Data regarding similarly situated employees may tend to confirm or deny Jones's

theory that he was disciplined and/or terminated because of his engagement in a protected activity, and it may lead to further discoverable information. *See Ray*, 971 F. Supp. 2d at 885.

BNSF is in part correct that the request is broader than it ought to be, and the Court will accordingly order production of data from a relatively shorter period of time. However, the Court cannot agree with BNSF that Jones's request is so broad that it is neither "relevant" nor "proportional" to the needs of the case. Fed. R. Civ. P. 26. By limiting the time period for comparator data, there is less risk that the "discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(c).

To the degree that BNSF will produce evidence that is not relevant to Jones's theory, the appropriate remedy will be exclusion at trial. Given the relative ease with which the evidence can be compiled and produced—as demonstrated by the production of comparable evidence in *Wooten v. BNSF Ry. Co.*, 9:16-cv-139-DLC (D. Mont.), and the testimony of a BNSF employee in the case of *Wallis v. BNSF Ry. Co.*, No. CV 13-40-TSZ (W.D. Wash.)—BNSF does not face a burden so heavy as to outweigh the value of production. Indeed, BNSF's request to limit production to only those employees accused of the same *conduct* as Jones would likely increase the burden of production, as Jones's conduct has not been precisely defined, while he was clearly accused of violating a specific (if expansive) rule. It

remains unexplained how narrowly or broadly BNSF would construe Jones's conduct. And that determination—the comparability of any other employee's conduct—should not be solely BNSF's to make.

In any event, given the broad scope of relevance for discovery purposes (and the narrower scope at trial), the Court is convinced that overbreadth is a lesser evil than underproduction. At trial, appropriate comparators will be those "similarly situated," with "similar jobs and display[ing] similar conduct." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Whether a BNSF employee is "similarly situated" presents "a question of fact," and Jones needs access to data to determine whether the standard is met. *Beck v. United Food & Commercial Workers Union Local 99*, 506 F.3d 874, 885 n.5 (9th Cir. 2007). BNSF cannot limit discovery under the standard of relevance governing admissibility at trial.

Finally, the parties have already agreed that BNSF can act to protect the identities of individual employees by providing only their initials. (Doc. 32 at 20–21.) While it is unclear why—given this agreement—BNSF raises this issue in its brief, the Court agrees with the parties and orders that BNSF may identify individuals by their initials.

Thus, the Court orders BNSF to produce **nationwide** comparator data from **_2016 through the present_**, with the point of comparison defined as employees

-11-

accused of violating the **same rule (1.6)** as Jones. BNSF may list individuals by initial rather than name.

### B. Incentive Compensation Plan ("ICP"), Performance Management Process ("PMP"), and Merit Award Documents

Jones next seeks an order to compel BNSF to produce personnel documents for management-level employees involved in the decisions to discipline and terminate Jones. Jones requested: (1) "a copy of the PMP . . . evaluations, goals, metrics and ratings for each BNSF management person involved in the disciplinary investigations, testimony, preservation of evidence, discipline assessment, discipline appeal, and/or PEPA Board review . . . , [including] the metrics used or relied upon by BNSF management for each evaluation"; (2) "documents containing information or data regarding metrics, goals, objectives, self-ratings, and supervisor ratings, and whether or not ICP bonuses and/or merit raises would be given" to certain railroad officers; (3) "copies of any BNSF Daily Performance Reports, Safety Metrics and Reporting, Velocity Score Cards, Dwell Statistics, and/or Velocity Statistics and measurements" comparing BNSF divisions and officers; (4) "documents reflecting the Performance and/or Corporate Goals, including the Corporate Dashboard, Daily Performance Report, Safety Metrics and Reporting, and Velocity Scorecard" for certain BNSF officers; (5) and PMP/ICP reports for specific officers (Docs. 31-1 at 51, 54, 58; 32-11 at 2–3; 32-12 at 3).

Jones specifically requested varying degrees of information regarding certain individuals: William Reed, James Pino, Dan Fransen, Rick Stauffer, Rico Montini, Rance Randle, Landon Boggs, Brian Clunn, Chris Lucero, and Jon Gabriel. In response to Jones's discovery request, BNSF produced documents as to three of those employees, Stauffer, Clunn, and Gabriel. BNSF now produces documents *in camera* for the Court's review regarding Pino, Boggs, Montini, Fransen, Randle, and Lucero. In his reply brief, Jones generally contends that information should be provided regarding any individual involved in Jones's discipline and termination, and he addresses with particularity why four of the employees—Pino, Fransen, Randle, and Lucero—should be seen as decision-makers. The Court agrees that the documents relating to these four individuals must be produced. Additionally, having reviewed the documents submitted *in camera*, it determines that Montini's documents should also be made available to Jones, given his role in overseeing safety operations in Jones's division.

BNSF argues that further production is unwarranted because "such personal information: (1) is not relevant to any claim or defense in this case; (2) is harassing; (3) violates the employees' right of privacy; (4) is not proportional to the needs of the case; and (5) is privileged and confidential information of persons not a party to this matter." (Doc. 32 at 29.) The Court is unconvinced.

Relevance, for purposes of discovery, is construed broadly; because the requested documents could show an incentive to discipline or terminate Jones, the relevance test is met for those managerial employees potentially involved in Jones's termination. (As the attorneys involved in this litigation well remember, some of the challenged documents ultimately proved relevant in *Wooten v. BNSF Ry. Co.*, 9:16-cv-139-DLC.) If the materials eventually prove to be without probative value, they will not be admitted and seen by the jury.

Additionally, while the documents may feel embarrassing or personal to the employees, they are personnel documents, and this is a case involving personnel decisions. This simply is not the sort of sensitive personal information giving rise to a valid objection to discovery. To the degree that BNSF's objections are based on "harass[ment]," "privacy," and "confidential[ity]," those concerns are sufficiently addressed by the parties' protective order and the redaction of information already made in the documents produced in camera. *See infra* p. 26–28. While the Court recognizes that the employees involved would prefer to not have these materials reviewed by Jones's attorneys—or to answer questions related to their job performance and compensation during their depositions—such preferences do not give rise to valid objections to discovery.

The Court agrees that the **ICP, PMP, and Merits Award documents** relating to **Pino, Fransen, Randle, and Lucero** should be available to Jones.

-14-

Additionally, having reviewed the documents submitted *in camera*, it determines that **Montini's** documents should also be made available to Jones in light of his role in overseeing safety operations in Jones's division. These documents shall be designated as "Confidential—Attorney's Eyes Only," as defined within the parties' stipulated protective order.

### C. Supplementation

The parties agreed that Jones may take additional time to provide expert disclosures. (Doc. 32 at 33–34.) However, there appears to be a misunderstanding or disagreement regarding the length of the extension. (Doc. 41 at 15.) The Court finds that Jones ought to have an opportunity to incorporate newly discovered evidence to which he is entitled, and it therefore orders that Jones **may supplement expert opinions and/or provide new expert disclosures, consistent with the deadlines elsewhere established in this Order.**

## II.     BNSF's First Motion for a Protective Order (Doc. 36)

BNSF seeks a protective order quashing Jones's Rule 30(b)(6) depositions. Jones requested BNSF produce corporate designees to submit to deposition on seven separate topics. BNSF scheduled four 30(b)(6) depositions in response. Assuming that none of the issues have been mooted by those depositions, the Court considers each topic in turn.

## A. Topics 1 & 2—ICP/PMP Information

As discussed above, *see supra* p. 12–15, the Court has ordered production of ICP and PMP information for various management-level employees. The analysis of this issue is no different. If it has not already, BNSF **must make available for deposition** an individual or individuals capable of answering questions regarding the ICP and PMP process for the same employees discussed above. *See supra* p. 12–15. The confidentiality protections discussed elsewhere in this Order, *see infra* p. 26–28, adequately address BNSF's concerns regarding disclosure of private information. The Court **will not limit the scope of the deposition(s) on the basis of any individual's privacy interests.**

## B. Topic 3—PEPA Board Review

Jones requested BNSF designate an individual to answer questions regarding "[a]ll records, information, data reports, memoranda, emails, opinions expressed or received and any ESI created, sent, copied to, or received by any participant at or invitee to the BNSF September 2017 PEPA Board meeting relating to BNSF's termination of Plaintiff's employment and any review thereof." (Doc. 43-1 at 3.) BNSF argues, in relevant part, that the request is "overly broad" and "discovery on discovery." (Doc. 37 at 11.) BNSF also points out that Jones has had an opportunity to depose the individual who made the termination recommendation and was present at the relevant PEPA Board meeting. Jones responds that this

individual was not a 30(b)(6) deponent capable of answering questions regarding recordkeeping and -sharing.

The Court agrees with BNSF that this particular request is broad and difficult to understand. However, it also agrees with Jones that he is entitled to learn about how the information that factored into the decision by the PEPA Board was compiled and shared. Thus, it limits the scope of deposition on this issue. BNSF **must make available for deposition** an individual or individuals capable of answering questions regarding the creation and sharing of information by participants in the PEPA Board meeting relating to Jones's termination. The deponent need not have personal knowledge of the PEPA Board's deliberation at that meeting, but he or she must know how records are compiled and shared for review by the PEPA Board.

### C. Topic 4—Comparator Data

As with the analysis of the depositions relating to ICP and PMP information, the Court's earlier analysis regarding production of comparator data largely controls the scope of the 30(b)(6) deposition(s) on this topic. However, Jones's request is so broad that it is highly unlikely any individual working for BNSF will have the detailed knowledge he seeks. Thus, the Court will limit the scope of these depositions, as Judge Johnston did in *Brewer*, No. 14-65-GF-BMM-JTJ.

BNSF **must make available for deposition** an individual or individuals capable of answering questions regarding **other employees charged with violating the same rule or rules as Jones during the years 2016 through the present**, including: the identity of who charged the other employees with the violations; whether the other employees had made safety-related complaints; and what discipline, if any, was assessed. The identities of those employees charged with violations and of those who charged the employees with violations will be indicated by first and last initials only.

### D. Topic 5—Accommodation for Sleep Apnea

Jones seeks to depose a person who will discuss "BNSF's policies, work rules, low hours and availability policies, statistics, metrics and/or procedures regarding compliance, non-compliance, and accommodation of employees—especially locomotive engineers and/or conduct[s]—diagnosed with sleep apnea or complaining of fatigue, both generally and as specifically applied, offered or considered for Plaintiff from January 1, 2016 through the present." (Doc. 43-1 at 4.) The Court notes that BNSF identified an employee to discuss the general process of accommodating employees with health concerns and/or disabilities.

The Court hopes that this employee's deposition moots any dispute regarding this issue. In the event that it does not, the Court determines that **BNSF has fulfilled its discovery obligations as to this issue.** First, the information

requested is likelier to become available through interrogatories and/or requests for production. Second, a supervisory employee familiar with the general leave policies is an appropriate deponent to address Jones's "questions about whether and to what extent [general] policies apply when employees . . . have intermittent leave approved . . . under circumstances where requirement to exercise that leave is difficult to anticipate." (Doc. 43 at 10.) Jones's "susp[icion]" that BNSF actually applies its leave policies in a discriminatory manner will need to be supported by documentary evidence before he can use the 30(b)(6) process to prove his claims. (Doc. 43 at 10.)

### E. Topic 6—BNSF Scheduling

Jones seeks to depose an employee to discuss:

> BNSF programs, policies, studies, initiatives, rules, procedures, data, statistics, cost-benefit analyses and methods used or considered by BNSF management from January 1, 2016, though the present in determining worker on-duty/off-duty scheduling, crew management, line-ups, changes to employee crew available/adequate employee rest, predictive or unpredictable employee work schedules, low hours or availability policies, practices and statistics and potential impact to worker safety, fatigue, and/or BNSF fatigue management regarding conductors and engineers.

(Doc. 43-1 at 4.)

BNSF contends that the request is so broad that BNSF cannot possibly designate an appropriate individual. The Court agrees that the notice could be worded differently to make compliance easier. However, it understands Jones's

meaning well enough. BNSF **must make available for deposition** an individual or individuals capable of answering questions regarding **how BNSF chooses its scheduling processes and what factors go into that choice, from 2016 through the present day.**

### F. Topic 7—BNSF Anti-Harassment Programs and Auditing

The Court notes that Jones has had an opportunity to depose an individual with the apparent authority and knowledge to discuss BNSF's auditing of anti-harassment programs and policies. It hopes that any dispute as to this deposition has been made moot. However, in the event that it is not, BNSF **must give notice of and make available for deposition** an individual or individuals capable of answering questions regarding how BNSF audits and enforces its anti-harassment programs and policies. This information may be relevant to determining if Jones's termination was retaliatory.

### III.  Jones's Second Motion to Compel

Unlike his first, more narrow motion, Jones's Second Motion to Compel is an omnibus motion. He requests that Court order BNSF to respond to his Requests for Production Nos. 12, 20, 42, and 50 and allow redeposition of BNSF witnesses on the basis of their failure to answer questions during initial depositions.

### A. Request for Production 12

-20-

Jones requested "copies of all BNSF's rules interpretations, rules guidance, or other communication available to any officer, management official, or employee of BNSF interpreting, analyzing, discussing, or providing information on each and every rule that BNSF claims that Plaintiff violated relating to this litigation." (Doc. 40-1 at 2.)

BNSF argues that "whether BNSF decisionmakers interpreted the rules correctly is not the issue in an employment case such as this." (Doc. 44 at 7.) This may be true, but that does not make BNSF policies regarding rule interpretation undiscoverable. How BNSF decisionmakers interpreted the rules is relevant to whether Jones would have been disciplined and/or terminated had he not engaged in protected activity. And official guidance on rules interpretation is probative of the decisionmakers' interpretation.

If BNSF has any additional materials responsive to Jones's request, **they must be produced.**

### B. Request for Production 20

Jones asked for "each document, item of electronically stored information, and tangible thing that indicates, for the four employees immediately above and immediately below Plaintiff on BNSF's seniority roster, the gross wages paid to each such employee in each calendar year from 2009 through the present as well as the employee's craft, redacting employees' names and/or other identifying

information to the extent necessary showing information similar to that contained in Exhibit 1[1] attached hereto." (Doc. 31-1 at 39.)

BNSF contends that it produced what it reasonably understood Jones to have been requesting; it further asserts that it will produce what Jones now requests. The Court assumes that BNSF has already done so, as Jones does not address this issue in his reply brief. Thus, the Court **denies as moot** Jones's motion as to this issue.

### C. Request for Production 42

Jones requested that BNSF "[p]roduce copies of the BNSF Internal Control Plan and supporting documents, including all revisions and variations that existed between the years of 2012–present." (Doc. 31-1 at 58.)   BNSF claims to have given Jones what he requests upon receipt of Jones's motion, but Jones avers that BNSF's production is incomplete and partially illegible.

Jones is entitled to the requested information in a fully usable, unaltered format.  To the degree that BNSF has any copies of the ICP plan from 2012 through the present that have not been produced, those copies **must be produced**.

### D. Request for Production 50

Jones asked that BNSF:

---

[1] "Exhibit 1" is a spreadsheet showing monthly statistics for a single employee, including work hours, total pay, and station and division rankings.  (Doc. 40-2.)

Provide for inspection in native format a copy of all memoranda, documents, records, information, ESI, notes, photographs, and/or other information related to the claims or defenses of any party in this matter found in any of the following databases and/or non-custodial sources of ESI:

a. IBM File Network Space;
b. Transportation Support System;
c. Shared R Drive;
d. Safety Issue Resolution Process;
e. Shared Drive containing Rule Books;
f. Higher Ground;
g. SAP;
h. Express;
i. Labor Relations Claims Management System;
j. Best Way System Dashboard Terminal Reports; and/or
k. Data Warehouse Dashboard Data.

(Doc. 31-1 at 65.)

BNSF objected to the response, contending that it is "overly broad, unduly burdensome, irrelevant, and not proportional to the needs of the case as it demands the search of numerous ill defined 'databases,' without regard to whether any discoverable information is reasonably likely to be found there, and without any consideration of the burden in doing so." (Doc. 31-1.) BNSF asks the Court to deny Jones's motion as to Request for Production No. 50 in its entirety, on the grounds that it is unreasonably vague.

The Court finds that Jones's request is sufficiently clear. This is a relatively narrow lawsuit relating to an alleged discriminatory termination, and the defense is that the termination was not discriminatory. "[A] person of ordinary intelligence

[would know] what documents are required," and a sophisticated business entity such as BNSF should have no trouble conducting the requested search. Wright, Miller, & Marcus, 8B Federal Practice & Procedure § 2211 (3d ed. 2019)

BNSF's wholesale objection to producing electronically stored information on the grounds of burden is without merit. Electronically stored information differs from other documents in form but not kind. Yes, digitization means that there is more information than there would have otherwise been. However, sophisticated corporate entities have the ability to effectively find digital information when they need to, which is exactly why they store that information electronically in the first instance. BNSF's claim that it is difficult to search the databases in which BNSF chooses to store information carries little weight.

Jones has listed specific databases and suggested search terms. BNSF describes Jones's request as "a mandate on how BNSF should conduct discovery and dictate what databases should be searched for nonspecific information." (Doc. 44 at 12.) BNSF's argument, then, is that Jones's request is both too specific and too unclear. But it cannot be both. In the absence of any suggestion from BNSF regarding how it can provide discoverable information responsive to Request for Production No. 50, the Court will adopt the specific search terms and databases Jones identified in his communications with BNSF.

BNSF therefore **must search the identified databases for ten search terms of Jones's choosing.**

### E. Depositions

Finally, Jones asks the Court for an order compelling answers from witnesses "[t]o the extent [they] have refused to answer deposition questions" beyond the scope of the issues briefed in response to BNSF's First Motion for a Protective Order, discussed above at pages 15–20. For example, Jones identifies former BNSF manager Dan Fransen, who refused to answer deposition questions on the grounds that the questions asked were "personal." (Doc. 40-5.) As discussed at length earlier in this Order, the standard for admissibility at trial does not govern the standard for discoverability. A deponent may avoid answering a question "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion [to terminate or limit]." Fed R. Civ. P. 30(c)(2). Moreover, even if there is no objection to relevance during the deposition, and the deponent answers the question, a relevance objection can be made at trial. Fed. R. Civ. P. 32(d)(3)(A). Discomfort is not a valid ground for objection. Jones shall have the opportunity to redepose those witnesses who refused to answer questions.

However, because it is unlikely that redepositions are likely to lead to significant, non-cumulative information, the Court will not order BNSF to pay the

related costs of discovery. Thus, BNSF **shall make available for redeposition** those witnesses who refused to answer Jones's questions in their initial depositions.

## IV. BNSF's Second Motion for a Protective Order (Doc. 45)

BNSF's Second Motion for a Protective Order relates to the confidentiality designation applicable to ICP and PMP documents, including training documents. At issue is the level of protection these documents should be afforded in this and future litigation. BNSF argues that the documents involve confidential business information and implicate privacy interests of non-parties. Jones argues that: (1) the public interest in access to court proceedings outweighs the individual privacy interests involved; (2) the documents are stale and accordingly do not deserve protection; and (3) the documents are likely to arise in future litigation, and future time and expense could be spared by placing them into the public domain. The Court summarily rejects Jones's third argument, which is not supported by any legal authority.

As discussed above, *see supra* p. 12–15, BNSF has produced certain ICP and PMP documents, and others will be produced to Jones following publication of this Order. BNSF designated those previously produced as "Confidential— Attorneys' Eyes Only," a category of protection defined in the parties' stipulated protective order. BNSF also produced general PMP training-related documents, including a video, which were marked as "Confidential," affording them slightly

less protection than the more personal ICP and PMP materials. Pursuant to the terms of that protective order, Jones challenged BNSF's designations, and BNSF filed its motion for Court resolution of the issue. (Doc. 46-1.)

The question now is whether BNSF's designations should stand. The Court finds that, at least at this stage of litigation, they should. If the documents become part of the record at trial, the Court will determine at that time whether they should be sealed. *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010); *see also Frost v. BNSF Ry. Co.*, CV 15-124-M-DWM (D. Mont. Oct. 10, 2019).

The Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed R. Civ P. 26(c)(1). Although the Court disagreed with BNSF that individual employees' ICP and PMP materials involved privacy interests so compelling as to avoid disclosure entirely, *see supra* p. 12–15, it nonetheless recognizes that the employees have a reasonable and significant interest in avoiding public dissemination of their salaries and performance reviews. *See, e.g.*, *Wisdom v. U.S. Tr. Program*, 232 F. Supp. 3d 97, 126 (D.D.C. 2017); *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017). And BNSF, which takes precautions to avoid sharing its proprietary training materials outside of the company, has sufficiently demonstrated that it reasonably views these materials as confidential. (Doc. 46-8.)

Thus, the Court grants BNSF's motion, finding that the categories set forth in the parties' stipulated protective order should be applied. All ICP and PMP documents relating to individual employees shall be treated as marked **"Confidential—Attorneys' Eyes Only,"** whether the documents were previously disclosed or made available to Jones pursuant to this Order. The training materials shall be treated as **"Confidential"** materials under the terms of the parties' protective order. The Court **reserves ruling** on the issue of whether these materials shall be sealed if they ultimately become part of the trial record.

## V. Award of Expenses

Pursuant to Federal Rules of Civil Procedure 26(c)(3) and 37(a)(5), the Court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" unless "the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." "If the motion is granted and part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

The Court finds that an award of fees and expenses would be unjust in this case. Notwithstanding the efforts of the parties to resolve their discovery disputes,

many issues remained unresolved. The Court trusts that counsel discern a pattern and consistency in how the judges in this district view these discovery issues, and that counsel will perform their future discovery obligations mindful of the discovery orders in *Brewer*, *Wooten*, and now this case. Because neither party has fully prevailed on the motions addressed in this Order, the Court will not award fees and expenses.

Accordingly, IT IS ORDERED that:

(1) Plaintiff Keith Jones's First Motion to Compel (Doc. 30) is GRANTED in part and DENIED in part, as outlined previously in this Order;

(2) Defendant BNSF's First Motion for a Protective Order (Doc. 36) is GRANTED in part and DENIED in part, as outlined previously in this Order;

(3) Plaintiff Keith Jones's Second Motion to Compel (Doc. 39) is GRANTED in part and DENIED in part, as outlined previously in this Order;

(4) Defendant BNSF's Second Motion for a Protective Order (Doc. 45) is GRANTED, as outlined previously in this Order; and

(5) Each party shall bear its own costs and fees incurred in briefing the motions discussed in this Order and complying with the terms of this Order.

IT IS FURTHER ORDERED that BNSF shall produce to Jones, subject to the parties' stipulated protective order, those documents that have been produced *in camera* and docketed as Docs. 33-1 through 33-9 and 33-18 through 33-45.

IT IS FURTHER ORDERED that the deadlines to complete the obligations ordered above are as follows:

(1) The parties shall serve answers and responses to written discovery on or before January 3, 2019;

(2) The parties shall complete all depositions on or before January 10, 2019;

(3) Jones shall supplement his expert opinions and/or provide new expert disclosures, as provided in paragraph I(C) above, on or before February 10, 2019[2]; and

(4) The motions deadline and trial setting remain as previously ordered (*see* Doc. 19), as the Court does not view this Order and the parties' associated obligations as constituting compelling reasons for a continuance.

---

[2] The parties are reminded, as provided in the scheduling order in this case (Doc. 19), that they are free to stipulate to the extension of any deadlines that do not impact the Court's ability to resolve motions and otherwise prepare for trial.

DATED this 11th day of December, 2019.

Dana L. Christensen, Chief Judge
United States District Court